UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA MALLOY,

    Plaintiff,

v.

LOUIS DEJOY,

    Defendant.
_____/

CASE NO. 21-12094

HON. DENISE PAGE HOOD

**ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 26) and
DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT (ECF No. 27)**

**I.    BACKGROUND**

On September 8, 2021, Plaintiff Sandra Malloy filed the instant suit against Defendant Louis DeJoy, Postmaster General of the United States Postal Service alleging: Violation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I); and Violation under Michigan's Elliot-Larsen Civil Rights Act of 1976, M.C.L. § 37.2101 *et seq.* (Count II) based on hostile work environment and sexual harassment. (ECF No. 1)

Malloy began working for the Postal Service as a rural carrier for the Rogers City post office in 2015. (ECF No. 27, Ex. 1, Malloy Dep. at 42-43.) In 2019, she became the custodian for the post office, a position she still holds. (*Id*. at 43.) Her

responsibilities include cleaning and landscaping. (*Id.* at 43-45.) In July 2019, Chad Robson began working at the Rogers City Post Office as Supervisor of Customer Services. (*Id.*, Ex. 2) Robson was Malloy's immediate supervisor who was able to issue disciplinary actions against Malloy which impacted her job. (*Id.*, Ex. 1 at 45, 50; Ex. 3 at 234-35.) The Postmaster of Rogers City is Kristi Domke who oversees all staff and was Robson's immediate supervisor. (*Id.*, Ex. 3 at 12, 15-16) Domke reported directly to Duane Wisuri, the Post Office Operations Manager for the Upper Peninsula and Northeastern Michigan, including Rogers City. (*Id.*, Ex. 4, at 7-9; Ex. 3 at 20-21.)

Malloy testified that Robson "never made any qualms" that he did not like women and did not regard them as equal to men. (*Id.*, Ex. 1 at 226-27.) On his first day of work, Robson stated, "women should never be a boss," women should not be in charge," and claimed that was why he gave the family business to his son to run. (*Id.*, Ex. 3 at 175-76; Ex. 11 at 29-30; Ex. 12 (Aug. 20, 2020 IMIP Report) at DEF-0830.) A few days later, Robson made the same statement to a subordinate female employee, Samantha Hall, who regarded this as demeaning to women. (*Id.*, Ex. 13 (Hall Dep.) at 10, 14; Ex. 11 at 29-30, 41-42; Ex. 12 at DEF-0830.) Malloy also heard or was otherwise made aware that Robson said this and viewed women in such a poor light. (*Id.*, Ex. 1 at 226.) Postmaster Domke knew that Robson made this

2

statement on day one of the job in July 2019 and continued making it for the next year. (*Id.*, Ex. 11 at 31; Ex. 3 at 175-76; Ex. 11 at 29-31; Ex. 12 at DEF-0830.) Domke's only response was to say, "Really, [Robson]. Do you know how that makes women feel?" (*Id.*, Ex. 11 at 31; Ex. 12 at DEF-0830.) By the end of Robson's first week of work at the Rogers City Post Office, Postmaster Domke felt shocked and intimidated by him. (*Id.*, Ex. 3 at 176-77; Ex. 11 at 32-33, 46; Ex. 12 at DEF-0831.)

On July 30, 2019, Malloy and Robson were trimming hedges outside of the Rogers City Post Office. (*Id.*, Ex. 1 at 60.) When they finished with the hedges, Malloy went to fold the tarp they had been using, a task she had performed on her own many times, and she told Robson she did not need his help. (*Id.*, Ex. 1 at 63-64.) Robson ignored Malloy, insisted on helping, and while folding the tarp he touched her breasts three or four times, "looking [Plaintiff] dead in the eye while he [was] doing it." (*Id.* at 61-68.) Malloy unsuccessfully attempted to block Robson from touching her breasts. (*Id.* at 194.) She was shocked, furious, highly embarrassed, and felt violated and dirty. (*Id.* at 67, 70; Ex. 11 at 33; Ex. 12 at DEF-0832.) As soon as she put the tarp away, Malloy reported to Postmaster Domke that Robson had touched her breasts. (*Id.*, Ex. 1 at 70-71.) Domke said she "would take care of it." (*Id.* at 73.) Domke did not conduct an investigation nor report the incident to human resources.

(*Id*., Ex. 4 at 20-24) Domke thereafter referred to Robson as Malloy's "boyfriend," which Malloy objected to. (*Id*., Ex. 1 at 219-21).

About a week later, Robson began stalking Malloy at work, in the basement of the Rogers City Post Office, a remote area of the building where she did her daily paperwork. (*Id*., Ex. 1 at 79-81, 87-88, 145-48, 150, 153-54.) Robson had no work-related reason to be in the basement, but he routinely would sneak or creep up on Malloy when she was alone and isolated there. (*Id*. at 148,150.) Malloy understandably was frightened and uncomfortable, and she did not want to be in the basement alone with Robson, particularly because he had touched her breasts. (*Id*. at 145-48.) Malloy told Postmaster Domke that she was uncomfortable with Robson following her into the basement and asked Domke to instruct him to stop. (*Id*. at 153-54.) Robson continued stalking, frightening, and isolating Malloy in the basement two to three times per week, until July 14, 2020. (Id. at 88.) Malloy complained to Domke weekly, but Domke failed to investigate or report Robson's stalking behavior. (*Id*. at Ex. 4, at 20-24)

In November 2019, Samantha Hall saw Robson rubbing his nipples on the workroom floor, and she felt disgusted and thought Robson was "creepy." (*Id*., Ex. 13 at 9, 14, 15; Ex. 11 at 33-34, 50; Ex. 12 at DEF-0833.) Malloy saw Robson do this

4

at work six times. (*Id*., Ex. 1 at 230-31.) Bryan Manning reported to Domke on November 14, 2019 that he saw Robson rubbing and flicking his nipples. (*Id*., Ex. 3 at 89-90.) From April through June 2020, Domke witnessed Robson stand by Malloy's work area and rub and flip his nipples, which disgusted her. (*Id*., Ex. 11 at 33-34, 51-52; Ex. 12 at DEF-0833.) Domke was "shocked," but Domke did not report it to her supervisor or anyone else. (*Id*., Ex. 3 at 89-90.). Domke told Robson it was inappropriate. (*Id*., Ex. 11 at 33-34; Ex. 12 at DEF-0833.) There is no evidence that she further investigated, documented Robson's misconduct, or took disciplinary steps against him.

On April 18, 2020, a Saturday, while Malloy was on a ladder, cleaning ceiling fans in the post office, she realized that Robson was looking up her untucked shirt. (*Id*., Ex. 1 at 89-90.) She descended the ladder, went to the bathroom, tucked in her shirt, and returned to her work. (*Id*. at 89-90, 103-05.) When Malloy was bent over at the waist, wringing out her cleaning rag in a bucket, Robson grabbed her hips from behind and rubbed his groin and erect penis across her buttocks. (*Id*. at 89-90, 103-105, 112.) Malloy was mortified, disgusted, and embarrassed. (*Id*. at 106-07.) Postmaster Domke was not at work that day, so on Monday, Malloy angrily reported to Domke that Robson had looked up her shirt, grabbed her hips, rubbed his groin against her "butt," and had an erection. (*Id*. at 91, 107-08, 112-14.) Malloy told

5

Domke, "What if he comes down in the basement and rapes me down there? I could scream to high heaven and nobody would ever hear me." (*Id*. at 110.) Malloy said she wanted to talk to the POOM, and Domke responded that she would inform him and take care of it. (*Id*. at 109-10, 115-16.) At Domke's request, Malloy wrote a statement about the incident and provided it to the Postmaster. (*Id*. at 120-21.) There is no evidence that Domke ever investigated Malloy's second complaint of sexual assault. Once again, Domke failed to fulfill her responsibilities as a Postmaster in responding to Malloy's report of physical sexual assault.

On July 9, 2020, Robson was in the post office break room with three female employees, including Malloy, when he talked about a female co-worker's breasts and "how he likes women's boobs." (*Id*., Ex. 3 at 121; Ex. 1 at 226, 228-29.) This was reported to Domke, who understood that at least one of the women was "very uncomfortable [that] a supervisor [was] talking this way." (*Id.*, Ex. 3 at 121; Ex. 11 at 35; Ex. 12 at DEF-0836.) There is no evidence in the record that Domke took any corrective action against Robson.

In June and July 2020, Malloy repeatedly encountered Robson changing his shirt in the post office break room. (*Id*., Ex. 1 at 129-42, 198-200.) She found him there once with his shirt off and pants undone, two or three times with his shirt

6

completely off, and close to 20 times in a state of partial undress. (*Id*. at 129-42, 198-200.) Malloy complained to Postmaster Domke about this more than ten times. (Id. at 138-42.) The last time Malloy saw Robson with his shirt off in the break room was July 13, 2020. (Id. at 132.) There is no evidence in the record that Domke ever investigated or admonished Robson.

On July 14, 2020, Robson mishandled an expensive vacuum, and when Malloy asked him about it, he mocked her on the workroom floor, called her a lunatic, and flailed his arms. (*Id*. at 158-61, 166.) Malloy went and reported this to Postmaster Domke. (*Id*. at 165-66.) Robson then again followed Malloy into the basement, and she reported this to Domke. (*Id*. at 167-68.) Domke told Malloy to call "Grand Rapids" to report the incident, which she did. (*Id*. at 161, 173-75, 177-178.)

On July 17, 2020, three days after Plaintiff called "Grand Rapids," HR placed Robson on emergency administrative leave due to "inappropriate verbal and physical behavior towards subordinate employees while acting in [his] position as a supervisor of customer service." (*Id*., Ex. 3 at 129-31; Ex. 1 at 183-84; Ex. 15 (Letter) at DEF-2860-61.) Malloy initiated EEO counseling on August 6, 2020. (ECF No. 26, Ex. 13)

This matter is now before the Court on Defendant DeJoy's Motion for Summary Judgment and Plaintiff Malloy's Motion for Partial Summary Judgment on

7

her hostile work environment claim. Responses and reply briefs have been filed. A hearing was held on the matter.

## II.     ANALYSIS

### A.     Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a

situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B.  Exhaustion of Administrative Remedies

DeJoy seeks dismissal of Malloy's sexual harassment complaint because she failed to timely file an EEO Complaint because the harassment incidents did not fall with the 45-days prior to the EEO contact. Malloy responds that her hostile work environmental claim is based on Robson's cumulative acts and is timely because it was filed less than 45 days after he stalked her, exposed himself to her and made sexual comments about a co-worker's breasts.

Before a federal employee can file a claim under Title VII, the employee must exhaust his or her administrative remedies. "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)); *see also Smith v. U.S. Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984) (concluding that the

9

Rehabilitation Act requires the same exhaustion of remedies as Title VII). One requirement is that the employee "initiate contact with a[n] [EEO] Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *McFarland*, 307 F.3d at 406 (alterations in original) (quoting 29 C.F.R. § 1614.105(a)(1)). "Timely contact with an EEO counselor is an administrative remedy that a federal employee must invoke before he may bring a claim of employment discrimination in federal district court." *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir.2004) (citing *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir.1991)). If the federal employee fails to comply with the 45 day time limitation, the agency must dismiss the entire complaint pursuant to 29 C.F.R. § 1614.107(a)(2) (2003). *Horton*, 369 F.3d at 910.

In light of *National Railroad Passenger Corp. (Amtrak) v. Morgan*, 536 U.S. 101, 111–14 (2002), the Sixth Circuit held that "*Morgan* overturns prior Sixth Circuit law addressing serial violations, i.e., plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir.2003). When an employee alleges discrete acts of discrimination or retaliation, the continuing

10

violation doctrine may not be invoked to allow recovery for acts occurring outside the filing period. *Id*. at 267.

The Supreme Court in *Morgan* distinguished between discrete acts and hostile work environment claims, explaining that: "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114. Discrete acts that fall within the statutory period do not make those that fall outside the period timely. *Id*. at 112. In contrast, for hostile work environment claims, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. at 117. In order to be timely, the EEO contact need only be made within 45 days of "any act that is part of the hostile work environment." *Id*. at 118. In determining whether an actionable hostile work environment claim exists, courts look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 116.

DeJoy argues that Malloy's EEO counsel was untimely because she did not contact an EEO counselor within 45 days when Robson allegedly touched her breasts on July 30, 2019 or when he looked up her shirt and rubbed his groin against her on April 18, 2020. DeJoy further argues that the only allegations falling within the 45-day limitations period between June 22, 2020 and August 6, 2020, are that Robson snuck up on Malloy in the basement two to three times per week until July 14, 2020, changed his shirt in the break room in June and July 2020, mocked her over the missing vacuum cord on July 14, 2020. DeJoy asserts that none of these incidents were based on her sex.

In addition to the incidents raised by DeJoy, Malloy also heard DeJoy talk about another employee's breasts on July 9, 2020. Although DeJoy describes Robson's actions of going down to the basement two to three times as merely sneaking up on Malloy, Malloy testifies that she felt Robson was "stalking" her. DeJoy's description of the break room incidents was that Robson was merely changing his shirt. However, Malloy testifies that he saw him with his shirt off and pants undone, two or three times with his shirt completely off, and close to 20 times in a state of partial undress. She had told him to use the bathroom if he was changing.

The Court finds that based on Malloy's testimony, along with other employee's testimonies, the acts between June 22, 2020 to August 6, 2020, are sufficient to

establish acts contributing to the hostile work environment claim. The EEO contact need only be made within 45 days of "any act that is part of the hostile work environment." Malloy's hostile work environment claim is based on Robson's cumulative acts and that certain of those acts constituting the claimed hostile work environment were within the 45 days prior to contacting the EEO, such as Robson stalked Malloy, was in various state of undress in the break room and made sexual comments about a co-worker's breasts. DeJoy's summary judgment motion is denied as to the 45-day time limitation.

### C. Hostile Work Environment

DeJoy seeks summary judgment on Malloy's hostile work environment claim whereas Malloy seeks partial summary judgment on her hostile work environment claim claiming that she carried her burden on establishing that she suffered from such a hostile work environment.

To survive summary judgment on a discriminatory hostile work environment claim, a plaintiff must show that: 1) she was a member of a protected class; 2) she was subjected to unwelcome discriminatory harassment; 3) the harassment was based on her sex; 4) "[t]he harassment had the effect of unreasonably interfering with [her] work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *Hafford v. Seidner*, 183 F.3d

506, 512 (6th Cir.1999). A hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). The totality of the circumstances must be considered to determine, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *See Williams v. General Motors Corp.,* 187 F.3d 553, 562 (1999). The issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether, taken together, the reported incidents make out such a case. *Id.* at 563. A verbal reprimand does not constitute an adverse action. *Weigold v. ABC Appliance, Co.,* 105 F. App'x 702, 708 (6th Cir. 2004). Subjective beliefs about mistreatment in employment are insufficient to survive summary judgment. *See Giles v. Norman Noble, Inc.,* 88 F. App'x 890, 894 (6th Cir. 2004); *Mitchell v. Toledo Hospital,* 964 F.3d 577, 585 (6th Cir. 1992).

Applying the factors to establish a hostile work environment, Malloy has met the first factor in that she is a member of a protected class. The totality of the circumstances has further shown that Malloy has met the second and third factors because she was subjected to unwelcome discriminatory harassment and that the harassment was based on her sex.

As to the fourth factor, there remain genuine issues of material fact that the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive work environment. Based on the evidence submitted by the parties, the Court finds that under the totality of the circumstances, Malloy has shown sufficient facts to create a genuine issue of material fact that the alleged harassment by Robson is sufficiently severe or pervasive to constitute a hostile work environment. Taken together, the reported incidents by Malloy show sufficient facts to bring before a jury that there existed a hostile work environment. The acts identified by Malloy are more than innocuous differences in the ways men and women interact with each other and went beyond "simple teasing" and were not isolated comments or incidents. The acts alleged could be inferred as so extreme as to change the terms and conditions of Malloy's employment. Malloy was afraid to be in the basement with Robson, to the point where she was afraid she might be raped. Malloy felt she was being stalked by Robson. Malloy saw Robson in various states of undress in the break room. There are genuine issues of fact as to whether Robson undressed because Malloy was in the break room. Malloy testified that she was inappropriately touched by Robson on her beasts and buttocks.

Malloy has met the fifth factor in that the incidents where Robson inappropriately touched her on her breasts and buttocks were reported to the

15

Postmaster, but other than perhaps verbal reprimands to Robson, there were no actions taken to discipline Robson. Robson was Malloy's supervisor, which made the harassment worse since Malloy had to raise the incidents to Robson's supervisor, the Postmaster. No actions were taken by the Postmaster even though the Postmaster also did not appreciate Robson's actions.

Finding genuine issues of material facts, DeJoy's Motion for Summary Judgment must be denied, along with Malloy's Motion for Summary Judgment on the her hostile work environment claim.

### III. CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that Defendant Louis DeJoy's Motion for Summary Judgment **(ECF No. 26)** is DENIED.

IT IS FURTHER ORDERED that Plaintiff Sandra Malloy's Motion for Partial Summary Judgment **(ECF No. 27)** is DENIED.

s/Denise Page Hood<br>
DENISE PAGE HOOD<br>
United States District Judge

DATED: October 4, 2023